JS - 6

1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   JOSE ALFREDO MARTINEZ,          )   CASE NO. CV 15-02104 MMM (Ex)
                                      )
12                  Plaintiff,        )   ORDER GRANTING PLAINTIFF'S
                                      )   MOTION TO REMAND; DENYING
13                                    )   REQUEST FOR ATTORNEYS' FEES
                                      )
14        vs.                         )
                                      )
15   MICHAELS, MICHAELS STORES, INC., )
     MICHAELS STORES PROCUREMENT      )
16   COMPANY, MICHAELS ARTS AND       )
     CRAFTS, DAVID ACUNA, AND         )
17   JOSEPH MATUS, and DOES 1 to 100, )
     inclusive,                       )
18                                    )
                    Defendants.       )
19                                    )
                                      )
20

21        On February 5, 2015, Jose Alfredo Martinez filed an action in Los Angeles Superior Court

22   against Michaels Stores, Inc., Michaels Stores Procurement Company (collectively, "Michaels"),[1]

23   David Acuna and Joseph Matus (collectively, the "individual defendants"), and various fictitious

24   defendants.[2]  Martinez alleges fourteen causes of action.  He pleads claims against Michaels for

25   various violations of California's Fair Employment and Housing Act ("FEHA"), California

26   ────────────────────

27        [1]The complaint also alleges claims against "Michaels" and "Michaels Arts and Crafts."  Neither
     has been served with Martinez's complaint, however.

28        [2]Notice of Removal ("Removal"), Docket No. 1 (Mar. 20, 2015), Exh. A ("Complaint").

Government Code § 12900 *et seq.*; negligent hiring; negligent supervision; negligent retention; breach of implied-in-fact contract not to terminate employment without good cause; and violation of California Labor Code § 1102.5.  The complaint alleges FEHA age and race harassment claims and an intentional infliction of emotional distress claims against all defendants, including Acuna and Matus.

On March 19, 2015, Michaels filed an answer to Martinez's complaint in Los Angeles Superior Court.[3]  On March 20, 2015, it removed the case to federal court, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332(a).  Michaels asserted that Acuna and Matus were fraudulently joined, and that their citizenship could thus be disregarded for purposes of determining whether complete diversity existed.[4]  On May 5, 2015, Martinez filed a motion to remand the case to state court.[5]  Defendants oppose the motion.[6]  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds Martinez's motion to remand appropriate for decision without oral argument; the hearing calendared for July 20, 2015 is therefore vacated, and the matter taken off calendar.

---

[3]Removal, Exh. C ("Answer").

[4]Removal, ¶¶ 6, 11.

[5]Motion to Remand ("Motion"), Docket No. 9 (May 5, 2015).

[6]Defendants Michaels Stores, Inc., Michaels Stores Procurement Company, David Acuna, and Joseph Matus' Opposition to Plaintiff's Motion for an Order to Remand to State Court ("Opposition"), Docket No. 17 (June 29, 2015).  At the time of removal, the individual defendants had not been served and thus did not join in the notice of removal.  (Removal, ¶ 4.)  Acuna and Matus were served on May 27, 2015.  (Notice and Acknowledgment of Receipt of Summons and Complaint, Docket No. 12 (June 4, 2015); Notice and Acknowledgment of Receipt of Summons and Complaint, Docket No. 13 (June 4, 2015).)  As a result, both the opposition was filed on behalf of Michaels and the individual defendants.  (See Opposition at 1.)

On June 17, 2015, with the motion to remand pending, Acuna and Matus filed a motion to dismiss Martinez's complaint as against them.  (Individual Defendants David Acuna and Joseph Matus' Notice of Motion and Motion to Dismiss Plaintiff's Complaint, Docket No. 16 (June 17, 2015).)

## I. FACTUAL BACKGROUND

Martinez, who is a 41-year-old Hispanic man, allegedly began working as an associate at a Michaels retail store on November 27, 2006.[7]  On August 8, 2012, he was promoted to operations manager.[8]  Martinez asserts that he performed his duties in an exemplary manner at all times and received various raises, making him one of the highest paid and oldest employees at his location.[9]

During his tenure as operations manager, Martinez was allegedly subjected to harassment, discrimination, and retaliation.[10]  Michaels associates purportedly made derogatory comments to him "[e]very day."[11]  Some comments allegedly concerned his Hispanic ethnicity and included racial slurs such as "beaner" and "wet back," while others included "gay boy," "serote" (which purportedly means feces), "stupid ass," and "dumb ass."[12]  Martinez contends that associates frequently told him to "shut the fuck up" or to do work himself when Martinez assigned them tasks.[13]

On May 7, 2014, a young Caucasian associate, James Tew, who frequently complained and refused to do his work, allegedly yelled and cursed at Martinez for about thirty minutes.[14]  Tew purportedly accused Martinez of tampering with Tew's time sheet and asserted that Martinez did

---

[7]Complaint, ¶ 9.

[8]*Id.*

[9]*Id.*

[10]*Id.*

[11]*Id.*, ¶ 10.

[12]*Id.*, ¶¶ 10–13. Specifically, Martinez alleges that "[a]nother associate, Angel Montoya, called Mr. Martinez 'serote,' which meant feces." (*Id.*, ¶ 11.) In addition, "approximately two or three times per week, Macabe Barbour called Mr. Martinez a 'stupid beaner,' referring to Mr. Martinez's ethnicity." (*Id.*, ¶ 13.) Furthermore, another associate, "Steven, also constantly referred to Mr. Martinez as a 'beaner' or a 'wet back,'" comments which Martinez alleges were in reference to Martinez being Hispanic. (*Id.*)

[13]*Id.*, ¶ 13.

[14]*Id.*, ¶ 15.

not know "what the fuck he was doing."[15]   Martinez alleges that in response, he cursed at Tew once.[16]   Elizabeth, an inbound coach at Michaels, allegedly noticed Tew's conduct and pulled him into her office where he continued to use profanity.[17]   Martinez, meanwhile, allegedly notified David Acuna, another inbound coach and one of Martinez's supervisors, of the incident.[18]   Acuna allegedly said he would "look into it."[19]   On May 13, 2014, Joseph Matus, also an inbound coach and one of Martinez's supervisors, purportedly told Martinez that he was going to investigate the incident further.[20]   On May 20, 2014, however, Michaels allegedly terminated Martinez for "using profanity against another associate."[21]   Martinez contends he was replaced by a Caucasian man in his twenties.[22]   He alleges that as a consequence of defendants' conduct, he has suffered and will suffer harm, including lost past and future income and employment benefits, and damage to his career.[23]

## II. DISCUSSION

### A.    Legal Standard Governing Removal Jurisdiction

The right to remove a case to federal court is entirely a creature of statute.   See *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979).   The removal statute, 28 U.S.C. § 1441, allows a defendant to remove when a case originally filed in state court presents a federal question or is between citizens of different states and involves an amount in controversy that exceeds

---

[15]*Id.*

[16]*Id.*, ¶ 16.

[17]*Id.*

[18]*Id.*, ¶¶ 2, 17.

[19]*Id.*, ¶ 17.

[20]*Id.*, ¶¶ 2, 18.

[21]*Id.*, ¶ 19.

[22]*Id.*, ¶ 20.

[23]*Id.*, ¶ 21.

$75,000.[24]   See 28 U.S.C. §§ 1441(a), (b); see also 28 U.S.C. §§ 1331, 1332(a).  Only state court actions that could originally have been filed in federal court can be removed.  28 U.S.C. § 1441(a); see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1393 (9th Cir. 1988).

Where a defendant removes under § 1332(a), the Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988), *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985), and *Libhart*, 592 F.2d at 1064); compare *Dart Cherokee Basin Operating Co., LLC v. Owens*, _ U.S. _, 135 S. Ct. 547, 554 (2014) ("In remanding

---

[24]The parties dispute both whether the diversity and the amount in controversy requirements are met.  In its notice of removal, Michaels argues that the requisite amount is in controversy.  It notes that Martinez was being paid $17.65 per hour in May 2014.  It asserts this would mean that an award of backpay alone would be more than $67,000 as of the date of removal.  (Removal, ¶ 28.)  It calculates this figure by assuming 95 weeks have passed since Martinez was terminated.  This calculation is erroneous, however, as the question is the amount in controversy as of the date of removal.  See *Robinson v. American Airlines, Inc.*, No. CV 15–0287 FMO (MRWx), 2015 WL 735661, *2 (C.D. Cal. Feb. 20, 2015) ("As for the back pay calculation, jurisdictional facts are generally assessed on the basis of plaintiff's Complaint at the time of removal"); *Chambers v. Penske Truck Leasing Corp.*, No. 1:11–cv–00381 LJO GSA, 2011 WL 1459155, *3, report and recommendation adopted, 2011 WL 1739913 (E.D. Cal. May 4, 2011) ("Solely for the purpose of determining whether the monetary jurisdictional limit has been met, the Court calculates . . . based upon the aforementioned Plaintiff's lost wages from the date of her termination to the time of removal").  Roughly 34 weeks had passed since Martinez's termination at the time the case was removed; this would mean that the backpay in controversy on the date of removal was approximately $27,000.  Michaels asserts that after including attorneys' fees and other damages sought in the complaint, the amount in controversy will easily be more than $75,000.  (*Id.*)

In his motion to remand, Martinez counters that the requirement has not been satisfied because the amount in controversy is unclear on the face of the complaint, which merely demands an amount exceeding $25,000.  (Motion at 7; see also Complaint at 24 ("The amount demanded exceeds $25,000").)  The fact that the amount is not clearly stated in the complaint, however, does not address whether defendants have demonstrated that the requirement is met; "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).  Moreover, at the scheduling conference on June 8, 2015, Martinez's attorney stated that the damages sought were "[a]t this point somewhere along the lines of $200,000." (Minutes of Scheduling Conference, Docket No. 14 (June 8, 2015).)  This further suggests that more than $75,000 is in controversy.  Because the court concludes *infra* that the individual defendants were not fraudulently joined and remands for lack of complete diversity of citizenship, the court need not determine whether the amount in controversy requirement has been satisfied.

the case to state court, the District Court relied, in part, on a purported 'presumption' against removal.  We need not here decide whether such a presumption is proper in mine-run diversity cases.  It suffices to point out that no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court").  "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."  *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

### B. Whether the Court Should Remand the Action to Los Angeles Superior Court

As noted, defendants contend the court has diversity jurisdiction to hear the action.[25]  "The district courts . . . have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between . . . citizens of different States." 28 U.S.C. § 1332(a); see also *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("[J]urisdiction founded on [diversity] requires that the parties be in complete diversity and the amount in controversy exceed $75,000").  In any case where subject matter jurisdiction is based on diversity, there must also be complete diversity, i.e., all plaintiffs must have citizenship different than all defendants.  See *Strawbridge v. Curtis*, 7 U.S. (3 Cranch) 267 (1806); see also *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 & n. 3 (1996).

### 1. Michaels' Citizenship

Michaels Stores, Inc. and Michaels Stores Procurement Company are both corporations.[26]  A corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  The term "principal place of business" means "the place where a corporation's officers direct, control,

---

[25]The court does not have federal question jurisdiction to hear the action because all of Martinez's claims are state law causes of action that do not raise a federal question.  See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").

[26]Removal, ¶ 8.

and coordinate the corporation's activities.  It is the place that Courts of Appeals have called the corporation's 'nerve center.'  And in practice it should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination[.]"  *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).  In the notice of removal, Michaels Stores, Inc. and Michaels Stores Procurement Company contend that they are Delaware corporations with their principal places of business in Texas.[27]  They are therefore citizens of Delaware and Texas.

### 2.  Martinez's Citizenship

A person is a citizen of the state in which he has his domicile, i.e., a permanent home where he intends to remain or to which he intends to return.  See *Gilbert v. David*, 235 U.S. 561, 569 (1915); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return").  "The status of the parties' citizenship . . . can be determined from the complaint or from other sources, including statements made in the notice of removal."  *HSBC Bank USA, NA v. Valencia*, No. 09–CV–1260–OWW–JLT, 2010 WL 546721, *2 (E.D. Cal. Feb. 10, 2010); see also *Kanter,* 265 F.3d at 857 (examining the complaint and notice of removal to determine citizenship).

In the complaint, Martinez alleges only that he is a resident of California.[28]  In the notice of removal, Michaels asserts that Martinez is a California citizen.[29]  Martinez contends that because the complaint alleges only his residence, defendants cannot invoke the court's diversity jurisdiction.[30]  This is incorrect, because Michaels affirmatively alleged that Martinez is a California citizen.  Based on the allegations in the complaint, i.e., that Martinez currently lives in California and worked for Michaels in California from 2006 until his termination, the court concludes that Michaels has met its burden of demonstrating that Martinez is a California citizen.  See *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("The courts have held that the determination of an individual's

---

[27]*Id.*, ¶ 8.

[28]Complaint, ¶ 1.

[29]Removal, ¶ 7.

[30]Motion at 9.

domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes").

### 3.   Individual Defendants' Citizenship

The complaint alleges that Acuna and Matus are both residents of California.[31]  In its notice of removal, Michaels acknowledges that both reside in California, but argues that this fact should be disregarded.  It does not assert that either is a citizen of California.[32]  In their opposition to Martinez's motion to remand, however, defendants concede that Acuna and Matus are citizens of California "for purposes of diversity" and focus on fraudulent joinder.[33]  The court must therefore determine whether the individual defendants were fraudulently joined.  If they were, their citizenship must be disregarded in determining whether diversity jurisdiction exists.  If they were not, the action must be remanded for lack of subject matter jurisdiction.  See *Johnson v. Wells Fargo & Co.*, No. CV 14-06708 MMM (JCx), 2014 WL 6475128, *4 (C.D. Cal. Nov. 19, 2014) ("The court must therefore determine whether Dadabhoy was fraudulently joined. If he was, his citizenship must be disregarded in determining whether diversity jurisdiction exists; if he was not, the action must be remanded for lack of subject matter jurisdiction").

### C.   Legal Standard Governing Fraudulent Joinder

The joinder of a non-diverse defendant is considered fraudulent, and the party's citizenship is disregarded for purposes of subject matter jurisdiction, "[i]f the plaintiff fails to state a cause of action against the [non-diverse] defendant, and the failure is obvious according to the settled rules of the state. . . ."  *Hamilton Materials, Inc. v. Dow Chemical Co.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (quoting *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)).  "It is a

---

[31]Complaint, ¶ 2.

[32]Removal, ¶¶ 10-11.

[33]Opposition at 1, 5.

commonplace that fraudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (citing *Emrich*, 846 F.2d 1193 & n. 1; *McCabe*, 811 F.2d at 1339); see also *Burden v. General Dynamics Corp.*, 60 F.3d 213, 221-22 (5th Cir. 1995) (concluding that the district court had subject matter jurisdiction where a defendant charged with intentional infliction of emotional distress had been fraudulently joined). Defendant must "prove that individuals joined in the action cannot be liable on any theory." *Ritchey*, 139 F.3d at 1318; see also *McCabe*, 811 F.2d at 1339 (stating that the removing defendant is entitled to present facts showing that the joinder is fraudulent); *Campana v. American Home Products Corp.*, No. 1:99cv250 MMP, 2000 WL 35547714, *3 (N.D. Fla. Mar. 7, 2000) ("[T]he removing party must show, with credible evidence, that there is no possibility that a plaintiff can state a cause of action against the nondiverse defendant"). The proof must be clear and convincing. *Hamilton Materials, Inc.*, 494 F.3d at 1206 (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)).

> "Merely showing that an action is likely to be dismissed against [a] defendant does not demonstrate fraudulent joinder. Rather, it must appear to 'a near certainty' that joinder was fraudulent. As a result, the removing defendant must establish that there is absolutely no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant. . . . Thus, that a claim against the in-state defendant is insufficiently pled does not prove clearly and convincingly that there is absolutely no possibility that the plaintiff will be able to establish a cause of action." *Amarant v. Home Depot U.S.A., Inc.*, No. 1:13–cv–00245–LJO–SKO, 2013 WL 3146809, *6 (E.D. Cal. June 18, 2013).

Given this standard, "fraudulent joinder claims [are] resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (quoting favorably the Fifth Circuit's decision in *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995) (citations omitted)); see also *West American Corp. v. Vaughan Basset Furniture*, 765 F.2d 932, 936 n. 6 (9th Cir. 1985) (stating that the court may consider affidavits, depositions, and other evidence); James W. M. Moore, MOORE'S FEDERAL PRACTICE § 102.21(5)(a) (3d ed. 2008) ("The federal court's review for

1   fraud must be based on the plaintiff's pleadings at the time of removal, supplemented by any affidavits

2   and deposition transcripts submitted by the parties").

3        Because all doubts must be resolved against removal, a court determining whether joinder

4   is fraudulent "must resolve all material ambiguities in state law in plaintiff's favor." *Macey v.*

5   *Allstate Property and Cas. Ins. Co.*, 220 F.Supp.2d 1116, 1117 (N.D. Cal. 2002) (citing *Good v.*

6   *Prudential Ins. Co. of America*, 5 F.Supp.2d 804, 807 (N.D. Cal. 1998)).  "If there is a non-fanciful

7   possibility that plaintiff can state a claim under [state] law against the non-diverse defendant[,] the

8   court must remand." *Id.*; see also *Good*, 5 F.Supp.2d at 807 ("[T]he defendant must demonstrate

9   that there is no possibility that the plaintiff will be able to establish a cause of action in State court

10  against the alleged sham defendant").  Given this standard, "[t]here is a presumption against finding

11  fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a

12  heavy burden of persuasion." *Plute v. Roadway Package Sys., Inc.*, 141 F.Supp.2d 1005, 1008 (N.D.

13  Cal. 2001).

14       As a result, a removing defendant alleging fraudulent joinder "must do more than show that the

15  complaint at the time of removal fails to state a claim against the non-diverse defendant." *Padilla v.*

16  *AT&T Corp.*, 697 F.Supp.2d 1156, 1159 (C.D. Cal. 2009) (citing *Burris v. AT&T Wireless, Inc.*, No.C

17  06-02904 JSW, 2006 WL 2038040, *2 (N.D. Cal. July 19, 2006)).  Rather, the defendant must establish

18  that plaintiff could not amend his complaint to add additional allegations correcting any deficiencies.

19  See *Good*, 5 F.Supp.2d at 807; see also *Stanbrough v. Georgia-Pac. Gypsum LLC*, No. CV 08-08303

20  GAF, 2009 WL 137036, *2 (C.D. Cal. Jan. 20, 2009); *Padilla*, 697 F.Supp.2d at 1159.  Consequently,

21  if a defendant simply argues that plaintiff has not pled sufficient facts to state a claim, the heavy burden

22  of showing fraudulent joinder has not been met.  *Birkhead v. Parker*, No. C 12–2264 CW, 2012 WL

23  4902695, *3 (N.D. Cal. Oct. 15, 2012) ("Even if these allegations do not rise to the level of outrageous

24  conduct, Defendants cannot establish that Plaintiff would not be able to amend the complaint to allege

25  a[ ] viable claim [for intentional infliction of emotional distress] against [his former supervisor] under

26  California law"); *Stanbrough*, 2009 WL 137036 at *2; *Padilla*, 697 F.Supp.2d at 1159 (defendant's

27  argument that plaintiff had not pled facts sufficient to state a harassment claim against her supervisor

28  did not establish that she could not amend her pleading and ultimately recover on such a claim).

1    Martinez asserts three claims against the individual defendants: (1) race and/or national origin

2    harassment in violation of FEHA; (2) age harassment in violation of FEHA; and (3) intentional

3    infliction of emotional distress.[34]   The court considers each cause of action in turn.

4           **D.     Whether Martinez Can State Non-Fanciful Claims for FEHA Harassment**

5           California Government Code § 12940(j) makes it unlawful for "an employer . . . or any other

6    person, because of race, religious creed, color, national origin, ancestry, physical disability, mental

7    disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender

8    expression, age, sexual orientation, or military and veteran status, to harass an employee. . . ."  CAL.

9    GOV'T CODE § 12940(j)(1).  The statute further provides that "[h]arassment of an employee . . . shall

10   be unlawful if the entity, or its agents or supervisors, kn[e]w or should have known of this conduct and

11   fail[ed] to take immediate and appropriate corrective action."  *Id.*

12          To state a FEHA harassment claim, an employee must show "(1) that he was subjected to verbal

13   or physical conduct [based on] a protected characteristic; (2) that the conduct was unwelcome; and (3)

14   that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment

15   and create an abusive work environment."  *London v. CBS*, No. CV 12–6605 GAF, 2012 WL 4372280,

16   *3 (C.D. Cal. Sept. 25, 2012).  He must also show that the employer, once apprised of the harassment,

17   failed to take adequate remedial and disciplinary action.  *Pereira v. Schlage Electronics*, 902 F.Supp.

18   1095, 1101 (N.D. Cal. 1995); *Rehmahni v. Superior Court*, 204 Cal.App.4th 945, 951-52 (2012).  See

19   *Hughes v. Pair*, 46 Cal.4th 1035, 1043 (2009) ("[A]n employee must show that the harassing

20   conduct was 'severe enough or sufficiently pervasive to alter the conditions of employment and

21   create a work environment that qualifies as hostile or abusive to employees,'" quoting *Miller v.*

22   *Department of Corrections*, 36 Cal.4th 446, 462 (2005)); see also *Andrade v. Staples, Inc.*, No. CV

23   14-7786 PA (Ex), 2014 WL 5106905, *3 (C.D. Cal. Oct. 9, 2014) ("Harassment, under FEHA, 'can

24   take the form of discriminatory intimidation, ridicule, and insult that is sufficiently severe or

25   pervasive to alter the conditions of the victim's employment and create an abusive working

26   environment.  Moreover, harassing conduct takes place outside the scope of necessary job

27   ───────────────

28          [34]Complaint, ¶¶ 37-52, 61-66, 105-110.

performance, [and is] conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives,'" quoting *Rehmani*, 204 Cal.App.4th at 951). FEHA harassment claims can be asserted against individuals. Cal. Gov't Code § 12940(i)-(j).

Martinez alleges that he was subjected to two types of harassment while working at Michaels: race and/or national origin harassment and age harassment.[35]  Defendants advance three arguments regarding Martinez's harassment claims.  First, they contend that Acuna and Matus cannot be liable for failure to prevent harassment – a form of inaction – and that this is the sole basis of Martinez's claims against them.[36]  See *Fiol v. Doellstedt*, 50 Cal.App.4th 1318, 1326 (1996) ("A supervisor who, without more, fails to take action to prevent sexual harassment of an employee is not personally liable"). Defendants are correct that Martinez does not allege specific instances of harassing conduct by either Acuna or Matus.  Martinez states in his motion, however, that Acuna "affirmed" and "condoned" associates' derogatory comments to Martinez.[37]  He also asserts that there was an overall hostile environment.  Given the pervasiveness of the harassment described in the complaint, and the fact that Martinez was allegedly replaced by a "Caucasian male in his 20s,"[38] it is at least possible that Martinez can plead "more than mere inaction by [Acuna] and [Matus]."  See *Archuleta v. Am. Airlines, Inc.*, No. CV 00-1286 MMM (SHx), 2000 WL 656808, *9 (C.D. Cal. May 12, 2000) ("Archuleta pleads more than mere inaction by Troy and Chatman, however.  He asserts that Troy 'operated and perpetuated . . . an extremely hostile, hateful and intimidating work environment,' and 'established and maintained

---

[35]"The protected group, for purposes of age discrimination statutes, consists of 'individuals who are at least 40 years of age.'"  *Schechner v. KPIX TV*, No. CV 08-05049 MHP, 2011 WL 109144, *4 (N.D. Cal. Jan. 13, 2011) (quoting *Katz v. Regents of the Univ. of California*, 229 F.3d 831, 835 (9th Cir. 2000)); see also *Rodriquez v. Int'l Longshore and Warehouse Union Local 29*, No. 08–CV–00433, 2009 WL 2575987, *11 (S.D. Cal. Aug. 18, 2009) (dismissing FEHA and ADEA claims where plaintiff failed to show that the challenged practice "adversely impacts the protected classification of workers over 40").  The complaint alleges that Martinez is a 41-year-old Hispanic man.  (Complaint, ¶ 9.)  The action was filed in February 5, 2015, and the incident with James Tew occurred on May 7, 2014, less than a year earlier.  Thus, Martinez was over 40 at the time of the incident.

[36]*Id.* at 7.

[37]Motion at 12.

[38]*Id.*, ¶ 20.

a type of medieval fiefdom and subculture of hatred, cronyism, harassment, fear, discrimination, racism, sexism, intimidation, favoritism and retaliation.'  In this regard, Archuleta asserts that Troy supported the prominent display of hate symbols in the workplace, including Nazi swastikas and hangman's nooses").

Thus, although Martinez's complaint does not allege affirmative acts by Acuna and Matus, "the . . . shortcomings" of the harassment claim "are strictly factual."  *Stanbrough*, 2009 WL 137036 at *2. Martinez, moreover, has indicated that he can amend his complaint to add allegations to this effect. Accordingly, defendants' first argument fails to show that there is no possibility Martinez can allege viable claims against Acuna and Matus.   See *Johnson*, 2014 WL 6475128 at *8 ("[T]o the extent that [Johnson's] allegations . . . [may] be insufficient to state a claim for defamation in state court, it is possible that such deficiencies [can] be cured by amendment"); *Padilla,* 697 F.Supp.2d at 1159 (granting a motion to remand where defendant failed to show that plaintiff would not be granted leave to amend his complaint to cure the asserted deficiency); *Barsell v. Urban Outfitters, Inc.,* No. CV 09–02604 MMM (RZx), 2009 WL 1916495, *3 (C.D. Cal. July 1, 2009) ("District courts have also granted motions to remand where the complaint failed to allege outrageous conduct, because it was possible that plaintiff could cure the deficiency by amendment")).

Defendants also contend that Martinez's allegations cannot support a FEHA harassment claim because they concern "personnel management actions" and fail as a matter of law.[39]  See *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 63 (1996) ("Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job").  Viewed in context, action by Acuna and Matus to affirm and condone pervasive harassment by coworkers would "reach far beyond typical personnel management decisions." See *Christ v. Staples, Inc.*, No. CV 14-07784 MMM (JEMx), 2015 WL 248075, *6 (C.D. Cal. Jan. 20, 2015) ("Christ contends, for example, that as part of Gutierrez's scheme to replace older drivers with younger, lower-salary drivers, he was assigned more difficult – and even impossible – mileage goals, and that Millan reprimanded him when he was unable to meet the goals. Christ also alleges that Gutierrez

---

[39]Opposition at 6-7.

1   falsely accused him of threatening Mendoza or engaging in acts of violence.  This resulted in his

2   termination. . . . [Thus,] the allegations could support a finding that at least some of the actions

3   purportedly taken were not strictly personnel management decisions"); *Hale v. Bank of Am., N.A.*,

4   No. CV 12–10064 MMM (PJWx), 2013 WL 989968, *5 (C.D. Cal. Mar. 13, 2013).

5          The court must, at this stage, consider the allegations in the light most favorable to Martinez.

6   Considered in that light, they could support a finding that "at least some of the actions purportedly taken

7   were not strictly personnel management decisions." See *Christ*, 2015 WL 248075 at *6; *Hale*, 2013 WL

8   989968 at *5; *Dagley v. Target Corp., Inc.*, No. CV–09–1330 VBF (AGRx), 2009 WL 910558, *3 (C.D.

9   Cal. Mar. 31, 2009) (holding that "if a plaintiff 'alleges conduct other than that inherent in terminating

10  an employee,' such as violating a 'fundamental interest of the employee . . . in a deceptive manner that

11  results in the plaintiff being denied rights granted to other employees,'" then the plaintiff has alleged

12  behavior beyond "a simple pleading of personnel management activity," quoting *Gibson v. American*

13  *Airlines*, No. CV 96–1444 FMS, 1996 WL 329632, *4 (N.D.Cal. June 6, 1996)).  See also *Smith v.*

14  *Staples Contract & Commercial, Inc.*, No. CV 14–07836–AB (ASx), 2014 WL 7333421, *6 (C.D. Cal.

15  Dec. 19, 2014) ("Defendants contend that every fact Plaintiffs allege as to Morrison constitutes an act

16  necessary to Morrison's job performance, rather than one 'engaged in for personal gratification, because

17  of meanness or bigotry, or for other personal motives.'  It may be that a jury would so find, but that is

18  not the inquiry before the court.  In California, whether an act falls within the scope of employment is

19  generally a question of fact reserved for the jury.  Of course, in exceptional circumstances the facts may

20  be so clear that 'no conflicting inferences are possible' and courts may determine whether the conduct

21  fell within the delegated scope of a supervisor's authority as a matter of law.  But Defendants offer no

22  argument to suggest that this is such a case. Rather, Defendants cite to three cases in which other district

23  courts granted motions to dismiss harassment claims for failure to allege any conduct outside the scope

24  of the individual supervisor's necessary job functions.  Notably absent from Defendants' argument is

25  any discussion of why Morrison's alleged conduct in this case was so obviously necessary to his job

26  functions that the Court may so decide as a matter of law.  It is not the Court's role to resolve that factual

27  question, which must be decided in state court" (citations omitted)).  "[T]o the extent that it is possible

28  that California law would treat some or all of [Acuna's or Matus's] alleged conduct as 'necessary' to

[their] job as a matter of law, [moreover,] it is 'at best a doubtful question of state law which should be tried in the state court and not determined in removal proceedings.'" *Id.* at *6 (quoting *Smith v. Southern Pacific Co.*, 187 F.2d 397, 402 (9th Cir. 1951)).   Accordingly, the court cannot say that there is no possibility that Martinez can assert a harassment claim against Acuna and Matus based on their status as supervisors.

Finally, defendants cite *Reno v. Baird*, 18 Cal.4th 640, 647 (1998), for the proposition that only an employer can be held liable for an employee's harassment.  See *id.* ("By the inclusion of the 'agent' language the Legislature intended only to ensure that employers will be held liable if their supervisory employees take actions later found discriminatory, and that employers cannot avoid the liability by arguing that a supervisor failed to follow instructions or deviated from the employer's policy").   It is well established that *Reno* concerns FEHA discrimination claims, and that it does not apply to harassment claims.  See *Hidalgo v. YRC Logistics Services, Inc.*, No. ED CV 10-1334 AHS (OPx), 2010 WL 4883654, *2 (C.D. Cal. Nov. 22, 2010) (noting that the holding in *Reno* is limited to FEHA discrimination claims); *Miller v. United Air Lines*, No. C01-00035 MJJ, 2001 WL 823815, *2 (N.D. Cal. July 10, 2001) ("[I]t is clear that *Reno v. Baird* does not address the issue of individual liability with respect to harassment claims"); *Mariano v. United Parcel Service, Inc.*, No. 3:13-cv-0776-GPC-JMA, 2013 WL 3795709, *6 (S.D. Cal. July 18, 2013) ("[T]he California Supreme Court held [in *Reno*] that an employee could not sue her individual supervisor *for discrimination* under California's Fair Employment and Housing Act" (emphasis added)).

In fact, in 2001, after the California Supreme Court decided *Reno*, "the California Legislature amended FEHA's harassment provision expressly holding individual employees liable for their harassment." *Scott v. Solano Cnty. Health & Soc. Servs. Dep't*, 459 F.Supp.2d 959, 966 (E.D. Cal. 2006) (citing CAL. GOV'T CODE § 12940(j)(3) ("An employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate corrective action")).  See also *Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276, 1288 (9th Cir. 2001) ("'As to supervisors . . . the language of FEHA is unambiguous in imposing personal liability for harassment or retaliation in violation of

FEHA,'" quoting *Page v. Superior Court*, 31 Cal.App.4th 1206, 1212 (1995)).  Moreover, "defendant fails to mention the more recent case of *Roby v. McKesson Corp.*, where the California Supreme Court determined that managerial acts can form the basis for a harassment claim where such acts have the 'secondary effect of communicating a hostile message.'"  *Rios v. Career Educ. Corp.*, No. 2:14-cv-07697-CAS (AJWx), 2014 WL 6670138, *5 (C.D. Cal. Nov. 24, 2014) (quoting 47 Cal.4th 686, 709 (2009)).  Thus, *Reno* does not foreclose a harassment claim against Acuna and Matus.

For all these reasons, defendants have failed to demonstrate that there is no possibility Martinez can state FEHA harassment claims against Acuna and Matus.

### E.   Whether Martinez Can State a Non-Fanciful Claim for Intentional Infliction of Emotional Distress

The elements of the tort of intentional infliction of emotional distress ("IIED") are "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.  Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community."  *Wilson v. Hynek*, 207 Cal.App.4th  999, 1009 (2012) (quoting *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 593 (1979); see also *Lopez v. County of Los Angeles*, No. CV 15-01745 MMM (MANx), 2015 WL 3913263, *11 (C.D. Cal. June 25, 2015) ("To state an [IIED] claim under California law, a plaintiff must plead '(1) that the defendant's conduct was outrageous, (2) that the defendant intended to cause or recklessly disregarded the probability of causing emotional distress, and (3) that the plaintiff's severe emotional suffering was (4) actually and proximately caused by defendant's conduct,'" quoting *Austin v. Terhune,* 367 F.3d 1167, 1172 (9th Cir. 2004)).

Martinez alleges that defendants' harassing and retaliatory actions constituted severe and outrageous conduct that caused him extreme emotional distress.[40]  He also alleges that he suffered and

---

[40]Complaint, ¶ 106.

16

continues to suffer "humiliation, emotional distress, and mental and physical pain and anguish."[41]
Defendants argue that Martinez's IIED claim fails as a matter of law under the doctrine of
managerial immunity; they also assert the claim is inadequately plead.[42]

"[A] claim of intentional infliction of emotional distress [can be asserted against a manager,]
'[w]here the behavior goes beyond the act of termination" or other management activity.  See
*Dagley v. Target Corp., Inc*., No. CV 09–1330 VBF (AGRx), 2009 WL 910558, *3 (C.D. Cal. Mar.
31, 2009) (quoting *Gibson*, 1996 WL 329632 at *4); *Graves v. Johnson Control World Services,
Inc.*, No. C–05–1772 SC, 2006 WL 618796, *11 (N.D. Cal. Mar. 13, 2006) ("In response, Johnson
Control argues that Graves cannot prevail on this cause of action because, as a matter of law,
personnel management decisions are not 'outrageous conduct beyond the bounds of human
decency.' . . . The court in *Janken* . . . note[d] that the remedy for personnel management decisions,
even where improperly motivated, is 'a suit against the employer for discrimination.' . . .  However,
Defendant overstates the reach of the Court's decision in *Janken* to the extent that it argues that any
decision affecting personnel management is not actionable under an intentional infliction of
emotional distress theory, no matter what the motivation. . . .  That proposition is far too broad for
the *Janken* decision to bear, and, in fact, courts considering intentional infliction of emotional
distress claims have clearly ruled that such claims can be brought where the 'distress is engendered
by an employer's illegal discriminatory practices," citing *Accardi v. Superior Court*, 17 Cal.App.4th
341, 353 (1993); *Hamilton v. Signature Flight Support Corp*., No. C–05–409, 2005 WL 1514127,
*7 (N.D. Cal. June 21, 2005)).

In fact, courts ordinarily find IIED claims based on workplace harassment or discrimination
viable even where asserted against individual supervisors.  See *Ontiveros v. Michaels Stores, Inc.*,
No. CV 12-09437 MMM (FMOx), 2013 WL 815975, *9 (C.D. Cal. Mar. 5, 2013) (concluding that
plaintiff mightmay be able to amend his complaint to state a viable IIED claim against his former
manager); *Chavez v. Amerigas Propane, Inc.*, No. CV 12–07524 MMM (Ex), 2013 WL 25882, *7

---

[41]*Id.*, ¶ 108.

[42]Opposition at 10.

(C.D. Cal. Jan. 2, 2013) (finding that a supervisor was not fraudulently joined where plaintiff alleged that the supervisor showered favoritism to young, Caucasian employees and failed to promote him because of his ethnicity, citing *Barsell v. Urban Outfitters, Inc.*, No. 09–2604 MMM (RZx), 2009 WL 1916495, *4 (C.D. Cal. July 1, 2009) ("Because this [IIED] claim is based on allegations of disability discrimination, there is a non-fanciful possibility" that plaintiff can state a claim against her supervisor)); *Graves*, 2006 WL 618796 at *11 ("[C]ourts considering intentional infliction of emotional distress claims have clearly ruled that such claims can be brought where the 'distress is engendered by an employer's illegal discriminatory practices"); *Rojo v. Kliger*, 52 Cal.3d 65, 81(1990) (stating that an "employer's discriminatory actions may constitute . . . outrageous conduct under a theory of intentional infliction of emotional distress"); *Murray v. Oceanside Unified School Dist.*, 79 Cal.App.4th 1338, 1362 (2000) (stating, in a case involving discrimination based on sexual orientation, that "a claim for emotional and psychological damage, arising out of employment, is not barred where the distress is engendered by an employer's illegal discriminatory practices"); see also *De Ruiz v. Courtyard Management Corp.*, No. C 06–03198 WHA, 2006 WL 2053505, *4 (N.D. Cal. July 21, 2006) ("[C]onduct contrary to the public policy . . . can support an IIED claim" against an individual supervisor).

Defendants assert, however, that Martinez has not adequately alleged extreme and outrageous conduct. Whether Acuna's and Matus's "alleged behavior [wa]s sufficiently extreme as to constitute 'outrageous' behavior is properly determined by the fact finder after trial or possibly after discovery upon a motion for summary judgment." *Angie M. v. Superior Court*, 37 Cal.App.4th 1217, 1226 (1995). As a result, even where the allegations underlying an IIED claim "appear[ ] to be a relatively weak," courts generally do not find fraudulent joinder, given that the sufficiency of the plaintiff's factual allegations "is of limited import" in deciding a motion to remand attacking a removal based on fraudulent joinder. See *Asurmendi v. Tyco Electronics Corp.*, No. C 08 5699 JF PVT, 2009 WL 650386, *5 (N.D. Cal. Mar. 11, 2009). This is because, as noted, it is possible that factual deficiencies can be cured by amendment. See *Burris*, 2006 WL 2038040 at *2 ("Cingular does not argue that Burris cannot assert a tort claim for emotional distress against his former supervisor as a matter of law. Rather, Cingular argues that Burris failed to state a claim for

18

intentional infliction of emotional distress because he did not allege any extreme or outrageous conduct, a necessary element of this claim. . . .  Although as currently ple[d], Burris has not alleged conduct which may be considered extreme or outrageous, Cingular has not demonstrated that, under California law, Burris would not be afforded leave to amend his complaint to cure this purported deficiency.  Accordingly, Cingular failed to demonstrate that it is obvious under settled state law that Burris cannot prevail against Mr. Caniglia and thus has not demonstrated that this Court has subject matter jurisdiction").  While Martinez's allegations may currently be insufficient, therefore, the deficiencies do not demonstrate that he cannot amend his complaint to state an IIED claim.

In sum, defendants have failed to carry their heavy burden of showing that Acuna and Matus were fraudulently joined.  Because defendants' assertion that Martinez's FEHA harassment and IIED claims against Acuna and Matus fail as a matter of law is not persuasive, and because they have not shown that "there is absolutely no possibility" Martinez can state a harassment or IIED claim against Acuna and Matus, defendants have failed to demonstrate by clear and convincing evidence that Acuna and Matus were fraudulently joined as defendants.  See *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (remand is proper unless defendants can show the claim fails as a matter of law or can point to "undisputed facts that would preclude plaintiff's recovery against the in-state defendant"); *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003) (noting that "the inability to make the requisite decision [as to whether joinder is fraudulent] in a summary manner itself points to an inability of the removing party to carry its burden").  As a result, the court cannot disregard Acuna's and Matus's citizenship in determining whether diversity jurisdiction exists.  As defendants concede, both are California citizens.  Consequently, complete diversity of citizenship is lacking, and the court must remand the case to Los Angeles Superior Court.  See 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded").

### F.    Martinez's Request for Attorneys' Fees

In the event the court remands the actcion, Martinez seeks attorneys' fees under 28 U.S.C. § 1447(c).[43]  "Under 28 U.S.C. § 1447(c), '[a]n order remanding the case may require payment of

---

[43]Motion at 14-16.

1   just costs and any actual expenses, including attorney fees, incurred as a result of the removal.'"

2   *Federal Home Loan Mortg. Corp. v. Lettenmaier*, No. CV–11–165–HZ, 2011 WL 1297960, *1 (D.

3   Or. Apr. 5, 2011) (quoting 28 U.S.C. § 1447(c)). "'Absent unusual circumstances, courts may award

4   attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable

5   basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be

6   denied.'"  *Id.* (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)).

7   "Removal is not objectively unreasonable solely because the removing party's arguments

8   lack merit and the removal is ultimately unsuccessful."  *Id.* (citing *Lussier v. Dollar Tree Stores,*

9   *Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008)).  "Rather, the court should assess 'whether the relevant

10   case law clearly foreclosed the defendant's basis of removal' by examining the 'clarity of the law

11   at the time of removal.'"  *Id.* (quoting *Lussier*, 518 F.3d 1066); see also *Patel v. Del Taco, Inc.*, 446

12   F.3d 996, 999–1000 (9th Cir. 2006) ("Del Taco's state court petition to confirm the arbitration award

13   contained only one state law cause of action; it did not contain any federal claim that could provide

14   the basis for a § 1441(c) removal.  Joinder of a federal claim and a claim for removal of a state court

15   action in a federal complaint cannot effect a § 1441(c) removal.  There being no objectively

16   reasonable basis for removal, the district court did not abuse its discretion in awarding attorney's

17   fees under § 1447(c) to Del Taco").

18   Martinez maintains that attorneys' fees under § 1447(c) are warranted because, like him,

19   Acuna and Matus are California citizens, and there was no reasonable basis on which to contend that

20   either supervisor was a sham defendant.[44]  The court declines to award attorneys' fees.  Although

21   not ultimately persuasive, the court does not find defendants' arguments so objectively unreasonable

22   as to warrant an award of attorneys' fees.  See *Lussier*, 518 F.3d at 1065 (noting that while "[t]here

23   is no question that [the defendant's] arguments were losers[,] . . . removal is not objectively

24   unreasonable solely because the removing party's arguments lack merit, or else attorney's fees

25   would always be awarded whenever remand is granted"); *Morales v. Gruma Corp.*, No. CV

26   13–7341CAS (FFMx), 2013 WL 6018040, *6 (C.D. Cal. Nov. 12, 2013) (declining to award

27

28      [44]*Id.* at 15.

20

1   attorneys' fees); *Coastal Const. Co. v. N. Am. Specialty Ins. Co.*, No. CV 10–00206–DAE–BMK,

2   2010 WL 2816694, *8 (D. Haw. July 14, 2010) ("While the Court concludes that NAS's arguments

3   for fraudulent joinder lack merit, the Court does not find NAS's arguments to be objectively

4   unreasonable as to warrant payment of attorneys' fees and costs").  Accordingly, the court declines

5   to award attorneys' fees.

6

7                                   **III.  CONCLUSION**

8           For the reasons stated, the court finds that Acuna and Matus were not fraudulently joined as

9   defendants.  Accordingly, it lacks subject matter jurisdiction to hear the action, and directs the clerk

10  to remand the action to Los Angeles Superior Court forthwith.  Martinez's request for attorneys' fees

11  is denied.[45]

12

13  DATED: July 15, 2015

14                                   MARGARET M. MORROW
                                     UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27        [45]Because it is remanding, the court denies Acuna and Matus' motion to dismiss [Docket No. 16]

28  as moot.  They may file an appropriate demurrer in state court if they so desire.

                                          21